Honorio **ADORNO LORENZANA**, Petitioner,

v.

The **PEOPLE OF PUERTO RICO** et al., Respondents.

Civ. No. 800–68.

United States District Court D. Puerto Rico.

Dec. 15, 1969.

Vicente Zayas Puig (Court appointed), San Juan, P. R., for petitioner.

William Arias, Asst. Dist. Atty., Dept. of Justice, San Juan, P. R., for the Commonwealth of P. R.

## OPINION AND ORDER

CANCIO, Chief Judge.

This is one of those rare cases in which one word acquires such an importance that the whole controversy depends on it. In fact, the liberty of a human being, that unvaluable treasure of mankind, depends exclusively on that word, or rather, on its meaning; more properly, on the meaning to be assigned to it when read in a given context, in order to determine what a speaker had in mind when he used it and, what is still more important, what was understood by his audience, in this occasion twelve men and women.

The case becomes still rarer when one realizes that the word, the magic word which may become the key to the cell that restrains the liberty of a man within the prison walls, is not to be found in the dictionary. Not to be found, at least, in the acceptation in which it was used by a judge before a jury during the conduct of a trial; by the judge who presided over the case of the petitioner herein, before the jury that pronounced him guilty of the offense for which he is now incarcerated.

The petitioner herein was tried in the Superior Court of the Commonwealth of Puerto Rico for a first-degree murder and found guilty of murder in the second degree, in a trial which ran from July 22 to August 7, 1963. He was sentenced on August 19 of the same year and he appealed his conviction to the Supreme Court of Puerto Rico. He has otherwise exhausted his local remedies, which fact has been admitted by the Commonwealth Government. This is the latest in a long series of petitions for writs of habeas corpus which he has presented to this Court, but the first to bring up this point.

Petitioner's quarrel with the procedure that he claims violated his constitutional right to an impartial trial by an impartial jury is to be found, as he claims, in the following quotation from the English version of the transcript of the proceedings in his case, containing part of the answer of the trial judge to the district attorney when the latter raised an objection to a line of questioning by the defense attorneys, mainly because it referred to remote facts. Petitioner argues that the word "vaina," used by the judge, discredited the theory of his case and prejudiced him. In order to understand this isolated quotation, it must be borne in mind that petitioner's defense was insanity.

THE COURT:

No, colleague, the defense has explained here a theory in the sense that the defendant has had a suffering that goes back to previous years and dissociation and "vainas." Dissociative reaction. It has been a no intentional lapsus and we call the attention to the lady and gentlemen of the jury to the fact that they should not take into consideration for anything the lapsus on my part. And then, it could be material, not only facts that occurred two years back, but facts of all of a life in relation to the defendant. Yes, that has to do with what has been announced here in the theory. Objection denied and continue with the interrogatory.

The word at issue, the Spanish term "vaina"—plural "vainas"—can easily be

found in any inexpensive paper-back dictionary, but its plain and simple meaning there will have no relationship whatsoever with either of the two possible and conflicting sets of acceptations which the petitioner and the Government feel that the trial judge had in mind, and still more important, no relationship with the meaning that, by the use of such noun, he, intentionally or not, conveyed or could have conveyed upon the jury which later brought a guilty verdict against petitioner. The common dictionary meaning of the word refers to physical objects such as "scabbard" and "pod," but the populace has awarded to it a whole series of connotations whose meaning varies considerably, not only throughout the Spanish-speaking world, but also in any given location, depending on the idea that the speaker intends to express and, of course, on the context in which it is used. To discover such intent from a cold set of written pages—the transcript of the proceedings in this case—there is no other alternative but to read the record and locate the exact meaning of the term as it was conveyed to the jury, from the context in which the concept was used. That is our duty today.

1. Since the crux of the case is precisely the meaning to be given to the word at issue, in the context in which it was used, the official interpreter was instructed not to translate it but leave it as he found it, "vaina," even in the English version. Had he attempted to provide us with his official translation, he would have given us his answer to the only question raised in this habeas corpus proceeding. That is not his duty. That is only in the judge's province.

2. The following quotation is from pages 434 to 435 of the original Spanish version:
P  Para noviembre de 1960, dónde trabajaba usted?
R  En Toa Alta.
P  Recuerda si para noviembre de 1960, recuerda haber viajado en algún momento con Honorio Adorno?
R  Sí, señor.
P  Tenga la bondad de decirnos dónde Y en qué forma.
R  Para esa fecha el señor Honorio Adorno era vecino mío, bien sea, yo

In reading the transcript of the proceedings, and even though it may take several pages to express one's reaction to it, one need not be a trained lexicographer nor a renowned jurist to quickly grasp the trial judge's intention and promptly reach the conclusion that he did not intend to convey upon the jury, through any derogatory remark or otherwise, a desire of his to discredit the defense raised by the then defendant—petitioner herein—or any feeling of his as to the guilt or innocence of the man being tried. Nor would it be even remotely justified to conclude that, notwithstanding the judge's impartial position, the jurors did receive the impression that the judge believed that the defense raised was not worthy of consideration by them as judges of the facts.

The trial was conducted in the Spanish language, which is the trial judge's and the jurors' vernacular. Nevertheless, an English translation [1] of the pertinent parts of the record [2] becomes of the essence at this point:

Q  About November 1960, where were you working?

A  In Toa Alta.

> viví en el Caserío Francisco Vega Sánchez y él también vivía al lado en otro apartamiento de allí. Entonces el señor me invitó a Toa Alta a comprar un becerro. Ya entonces estaban las Navidades.
> P  ¿ En qué fueron?
> R  En un carro.
> P  ¿ Quién guiaba?
> R  El señor Honorio.
> SR. FISCAL FIGUEROA:
> Nosotros vamos a objetar esto, Vuesto Honor.
> HON. JUEZ:
> ¿ Fundamento?
> SR. FISCAL FIGUEROA:
> Según entendemos, el testigo comenzó hablando de esta situación que ocurrió según él en noviembre de 1960. El fundamento para nuesta objeción, Vuestro Honor, primero, que es muy remoto; aquí los hechos que se están ventilando son de junio 21 de 1962. Se están trayendo hechos del 1960, casi dos años antes. Nosotros objetamos eso por ser remoto.

Q Do you recall if in November 1960, do you recall if at any moment you traveled with Honorio Adorno?

A Yes, sir.

Q Will you please tell us where and in what manner?

A Around that date Mr. Honorio Adorno was my neighbor, that is I lived at the Francisco Vega Sanchez Public Housing Project and he also lived there in an apartment next door. Then the gentleman invited me to go to Toa Alta to purchase a calf. Then it was near Christmas.

Q In what did you both go?

A In a car.

Q Who was driving?

A Mr. Honorio

DISTRICT ATTY. FIGUEROA:

We are going to object to that, Your Honor.

THE COURT:

Grounds?

DISTRICT ATTY. FIGUEROA:

As we understand the witness commenced speaking about that situation that occurred, according to him, in November 1960. The grounds for our objection, Your Honor, first that it is too far back, the facts being discussed here are of June 21, 1962. Facts of 1960, almost two years prior, are being brought here. We object for being too far back.

THE COURT:

What other reason? Any other?

DISTRICT ATTY. FIGUEROA:

It is immaterial.

THE COURT:

No, colleague, the defense has explained here a theory in the sense that the defendant has had a suffering that goes back to previous years and dissociation and "vainas." Dissociative reaction. It has been a non intentional lapsus and we call the attention to the lady and gentlemen of the jury to the fact that they should not take into consideration for anything the lapsus on my part. And then, it could be material, not only facts that occurred two years back, but facts of all of a life in relation to the defendant. Yes, that has to do with what has been announced here in the theory. Objection denied and continue with the interrogatory.

ATTY. GONZALEZ:

We want to state for the record that we take exception to the Court's manifestation upon referring to the explained theory that of "vainas." We are very sorry to do so but we state it for the record.

THE COURT:

The Court "sua sponte" gently believes that it has recognized that it was a lapsus. Do you want a mistrial for that, colleague? * * * Continue, then.

HON. JUEZ:
¿ Cuál otra razón? ¿ Alguna otra?
SR. FISCAL FIGUEROA:
Es inmaterial.
HON. JUEZ:
No, Colega, aquí se ha expuesto una teoría por la defensa en el sentido de que el acusado ha venido con un padecimiento que se arrastra a daños anteriores y disociación y vainas. Reacción disociativa. Ha sido un lapsus no intencional y llamamos la atención a la dama y caballeros del jurado en el sentido de que deben considerar para nada el lapsus de mi parte. Y entonces, puede ser material no solamente hechos que ocurrieron dos años atrás sino hechos de toda una vida en relación con el acusado. Sí, eso tiene que ver con lo qua ha anunciado aquí la teoría. Sin lugar la objeción, y continúe el interrogatorio.
LIC. GONZALEZ:
Nosotros deseamos manifestar para récord que excepcionamos la manifestación del Tribunal al calificar, al referirse a la teoría expuesta de que "vainas". Sentimos profundamente tener que hacerlo pero lo consignamos para récord.

In analyzing this point, it does not become incumbent upon the Court to judge the trial judge's good or bad taste in choosing the vulgar word "vainas," a slang expression very common in every-day parlance, to be used in the solemn environment of a court in session. Our only concern today is to find its meaning as understood by the jurors, and the impact, if any, that it may have had on their conscience and their sound judgment.

In our analysis of the meaning of our idiom, apart from our knowledge of Puerto Rican slang and vulgar expressions, we recurred to dictionaries of everyday use and to dictionaries of Puerto Ricanisms and Americanisms. The Velázquez Spanish and English Dictionary, 1965 Edition, and other common dictionaries that we examined, limit themselves to the traditional meaning and, therefore, are not of any help to us here. A well-known and quite complete Latin American dictionary, U.T.E.H.A.,[3] 1968 Edition, and others like Vox: Diccionario General Ilustrado de la Lengua Española; Martínez Amador: Standard Spanish-English Dictionary, 1964; Diccionario Manual e Ilustrado de la Lengua Española, 1950; Augusto Malaret: Vocabulario de Puerto Rico, 1955, and the conservative but reliable Diccionario de la Real Academia Española de la Lengua, in addition to providing in Spanish the classical acceptations that Latin America inherited from Spain, which refer to physical things such as "scabbard," and "pod," provide others that bear with them a more modern savor, among them, "hardship," "nuisance," "contingency," "accident" and "worthless or despicable person." (Translation provided.) Other specialized dictionaries of Americanisms and Puerto Ricanisms which we have

been able to get hold of, most of them outdated and obsolete, make reference only to those meanings which in popular parlance are mostly used to refer to things that are bothersome or difficult to perform.[4]

But what is truly important in this case is not what the standard dictionaries, both the ordinary and the specialized ones, spell out regarding the term in question. Precisely, the issue is what the term meant to the jury at the moment the judge employed it, as well as during the rest of the trial and, too, during its final deliberation in the jury room to reach its verdict. To discern such truth, what really counts is what, the present day, average Puerto Ricans —the jurors—understand by the term "vaina" as uttered by the trial judge in the particular context in which it was used, and viewed in the light of the judge's conduct throughout the entire proceeding. This opportunity the jury in the instant case did have.

It does not matter whether or not the term appears in the dictionaries that have been perused. In addition to the connotations of the word already pointed out, most of them depreciatory, for the average Puerto Rican the term also implies connotations that are not pejorative. As we shall point out, these mesh perfectly within the context in which the term was used by the trial judge.

It is very frequent today in Puerto Rico to use the word "vaina" to mean almost anything, as a substitute for an expression or a series of expressions that do not come easily to mind at the moment, or that one just does not care to mention for any reason whatsoever. And, in that sense, it does not necessarily have any derogatory connotation.[5] In

---

3. Unión Tipográfica Editorial Hispano Americana.

4. If the judge's words conveyed this meaning to the jury, which we do not believe, then it could have conceivably had on them some remote impact, though very

light. As we will see, even if that were the case, it could have had no influence upon their evaluation of the merits of the case nor upon their verdict.

5. It would not be strange, for example, to hear a child who has been asked what

that sense, the word is used in today's Puerto Rican Spanish where the popular expression "stuff" and "whatchamacallit" or "what you may call it" would be used in English, and many times is equivalent to English expressions such as "and what not," "and the like," "and so forth," "and so on and so forth," "and stuff like that," "and stuff like that there," "and other things," "and things like that," and others that are comprised in the more sophisticated though common word "etcetera," which, like "vaina," may or may not carry with them depreciatory or disparaging innuendos, depending on the context in which they are found.

It is interesting to note at this point, as an important factor to determine the real intention of the trial judge and the possible reaction of the members of the jury to his ruling, that he used the word "vainas," precisely in a moment in which he was explaining to the district attorney the reason for his overruling an objection raised by him to a previous question or, rather, line of questioning by the defendant's attorney. The jury must have visualized the judge at that moment as being inclined to the position of the defendant and not as a person hostile to him or a despiser of his defense of insanity. No one could think that at the very same time that he was upholding the defense of insanity as a good reason for ruling against the district attorney and in favor of petitioner herein, he was condemning it as a defense. Furthermore, the jury could hardly have thought that the trial judge was belittling the defense of insanity when the incident which gave rise to the present petition for a writ of habeas corpus occurred, in the light of the fact that two more times, almost immediately after using the word "vainas" (and having excused himself to the jury for having used it, and having asked them to disregard it), he overruled an objection by the district attorney, in terms which also

indicate the respect he had toward that defense, to wit:

THE COURT:

Colleague, within a theory announced by the defense, behavior not only prior but also after the facts being investigated is admissible.

DISTRICT ATTY. NORIEGA:

I accept it so, but within a theory things can be included that are not admissible. An attorney can explain a theory and that theory can oblige the court because there are many things that are not admissible.

THE COURT:

That is not what I mean to say. I mean to say that within a theory of that nature it is permissible to bring evidence of conduct, behavior, episodes, not only prior to but after the act that is being investigated, to the principal issue so that finally, the trier makes a final determination as to what was the mental state of mind on the date that it is alleged the acts were committed. Therefore the matter is denied. Continue. (Tr. 437)

Similarly, when the notes taken by a psychiatrist prior to the alleged murder, during medical interviews with the accused (as a psychiatric patient) were going to be read into the record—notes favorable to the defense and offered by defense counsel—the judge expressed himself thusly:

Exhibit one, Defense, is a record by Dr. Guzmán. Let it be read very slowly so that the reporter can take it down. Please pay attention, lady and gentlemen of the jury, to what the distinguished [attorney] is going to read. (Tr. 449)

From many other previous portions of the transcript, not quoted here, it can readily be seen that the defense raised was expressed not merely by using the word "insanity" or a short phrase to that

did Santa Claus bring him say: "a bat, a ball, a glove and a lot of other

'vainas,' " "vainas" which he undoubtedly is very fond of.

effect, but by an elaborate enumeration of facts, situations, circumstances and symptoms which, continuously repeated by the judge or anyone else during the trial, could become tedious, and that any word meaning or having the connotation of "etcetera," ready to jump to one's lips to cut short the unnecessary and bothersome enumeration would be used. That, and no other must have been the meaning intended by the trial judge when, instead of the word "etcetera," he used the word "vainas." That, and no other must have been the meaning understood by the jury.

As we have seen, there is absolutely no doubt in my mind that the trial judge in petitioner's case intended nothing derogatory for him or his defense of insanity. Similarly, there is absolutely no doubt in my mind that the jurors, all of them Puerto Ricans familiar with to-day's Puerto Rican meaning of the word "vaina," received from him no message, even imaginary, regarding the merits of petitioner's defense. I am convinced that any impartial person could draw no other conclusion from an objective reading of the record of the case. The brief statement of the defense attorney [6] to the effect that the Court was referring to the defendant's theory as "vainas" [in its derogatory sense] is, in my esteem, not warranted.

This notwithstanding, let us assume for a moment that at least one of the members of the jury [7] did receive for a while the impression that the word "vaina" was used in one of its derogatory meanings. Even so, this could not have influenced his mind so as to lead him to find the petitioner guilty. All jurors were present during the whole trial and were able to observe the objective attitude of the trial judge at all times and his respectful treatment of the accused. A mere reading of the record so reveals. Nowhere in the rather voluminous record of this case can one find one single occasion in which the judge treated the accused with anything but respect and due consideration. But even granting the assumption we have made for the purpose of the discussion of this point, an isolated incident like this could not conceivably have had any adverse effect on the accused or influence on the verdict of the jury. This is more so if we notice that even before the defense attorney reacted to the vulgar expression "vainas," the judge himself *sua sponte,* immediately instructed the jury not to take into consideration for anything what he termed as a lapsus on his part. This instruction cured any possible error that may have been committed by the judge.

No prejudicial error was committed and we can see no reason to nullify the proceedings before the Superior Court of the Commonwealth of Puerto Rico.

In view of the foregoing, the petition for a writ of habeas corpus is hereby denied.

6. Tr., p. 435; Page 6 of this opinion.

7. In Puerto Rico a majority verdict of 9 to 3 suffices for a conviction. Petitioner was convicted 12 to 0 for second-degree murder and 9 to 3 for bearing arms.